IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | | |
|---|---|---|
| JAMES L. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0:05-2387-MBS-BM |
| v. | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |
| SPRINGS INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This action was originally filed by the Plaintiff in the South Carolina Court of Common Pleas, Sixth Judicial Circuit, but was subsequently removed by the Defendant to this Court based on federal question jurisdiction. 28 U.S.C. § 1331. Plaintiff asserts discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq..

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on May 26, 2006. At that time, Plaintiff was represented by counsel. No memorandum in opposition to Defendant's motion was filed at that time; however, the Plaintiff apparently came to the Courthouse on October 6, 2006 and advised Clerk's Office staff that he was proceeding pro se. Plaintiff also filed an affidavit with the Court on that date. See Court Document No. 21.[1]

On October 31, 2006, Plaintiff's attorney filed a motion to withdraw as counsel in the case, and this motion was granted on November 3, 2006. No new counsel made an appearance, and

_____

[1]Defendant has filed a motion to strike Plaintiff's affidavit.

1



the undersigned therefore directed that a <u>Roseboro</u> order be filed, reminding Plaintiff that a motion

for summary judgment was pending, advising Plaintiff of the importance of a motion for summary

judgment, and of the need for him to file an adequate response.  Plaintiff was given thirty-four (34)

days to file a response to the Defendant's pending motion for summary judgment, and was

specifically advised in that order that if he failed to respond adequately, the Defendant's motion may

be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition, with

attachments, on November 30, 2006.  Defendant's motion is now before the Court for disposition.[2]

### <u>Background and Evidence</u>[3]

Plaintiff, an African-American, alleges in his Complaint that he was employed by the

Defendant from on or about September 1989 until on or about April 2005, and that during that period

of time he was discriminated against in promotion and training decisions on the basis of his national

origin because the Defendant favored Hispanics for promotion. Plaintiff further alleges that, after he

filed an administrative claim with the South Carolina Human Affairs Commission (SCHAC), he was

terminated in retaliation for having filed that administrative complaint.

In support of summary judgment in the case, the Defendant has submitted an affidavit

from Linda Thompson, who was an employee of the Defendant during the relevant time period.

Thompson attests that she worked with, and became friends with, the Plaintiff.   Thompson attests,

however, that over time the Plaintiff expressed a desire to have a romantic relationship with her, and

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e) and (g), D.S.C.  The Defendant has filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. <u>Pittman v. Nelms</u>, 87 F.3d 116, 118 (4th Cir. 1996).

2



began to harass her at the work place about having a relationship. Thompson attests that she complained to her manager, Rodney Thomas, following which Thomas informed her that he had spoken to the Plaintiff and instructed him to leave her alone.

Thompson further attests that on April 16, 2005, she was turning into the Elliott Plant parking lot (where they both worked) when she noticed Plaintiff following her in his car. Thompson attests that after she parked, Plaintiff blocked her vehicle in with his automobile, and proceeded to beat on the window of her truck with his fist and hand. Thompson attests that when she got out of her truck, Plaintiff attacked her and threw at least two punches, striking her on her shoulder. Thompson attests that Plaintiff yelled at her "if I can't have you, nobody can", or words to that effect, and also threatened to throw acid in her face. Thompson attests that this assault was witnessed by Betty Todd, one of her co-workers. Thompson complained about Plaintiff's conduct to Susan Steele, a supervisor, and on Monday, April 18, 2005, she reported the matter to Human Resources Manager Sherri Wilson, to Rick Stevenson, and to her immediate supervisor, Rodney Thomas.

Thompson attests that Wilson conducted an investigation into her allegations, and also placed a security guard at the plant gate to ensure that Thompson felt safe. Thompson attests that she also changed her telephone number so that Plaintiff would not be able to call her. Thompson attests that following Wilson's investigation of her complaint, she terminated Plaintiff's employment. Thompson attests, however, that even after his termination, Plaintiff still followed her on several occasions, and even called her at home on at least one occasion.

Thompson further attests that, when she and the Plaintiff were friends, Plaintiff often joked about having broken into the office at the Plant and stolen personnel records. Thompson attests that Plaintiff had reviewed her personnel file, and was able to tell her about an occasion that she had



an unexcused absence from work before they even knew each other.  Thompson also attests that Plaintiff showed her some of the confidential records that he had stolen from the company.  See generally, Thompson Affidavit.

The Defendant has also submitted an affidavit from Sherri Wilson, who attests that she was the Human Resources Manager at the Elliott Plant during the relevant time period.  Wilson attests that Plaintiff was employed at the Plant until she terminated his employment on April 20, 2005 for physically assaulting a female employee on company property.  Wilson attests that when Plaintiff was hired, he received orientation concerning the rules and regulations of the Defendant, including its equal employment opportunity policy and rules and regulations covering employee conduct.  See also, Exhibits 1-3, attached to Wilson's Affidavit.  Wilson attests that these rules and regulations specifically provide for disciplinary action, up to an including immediate discharge, for violations of company policy and/or misconduct.  See also Exhibit 3 to Wilson Affidavit.  Wilson attests that the Defendant's EEO policy expressly prohibits discrimination on the basis of race, color, sex, religion, handicap, national origin, or status as a Vietnam era veteran. See also Exhibit 4 to Wilson Affidavit.             Wilson attests that during the time period relevant to this lawsuit, Plaintiff held the position of Portable Tie-In Helper.  Wilson attests, however, that Plaintiff was actually performing  the job of Portable Tie-In Operator, which was a higher grade position with higher rate of pay.  Wilson attests that in October 2002, the Defendant posted a cross-training opportunity for the position of Loom Fixer, a higher grade position, and that the Plaintiff along with eleven other employees bid for this position.  Wilson attests that Plaintiff was one of two employees selected for the cross-training position, with the other employee being Michael Rogers (Caucasian).   Plaintiff and Rogers thereafter began cross-training for the Loom Fixer position on or about April 7, 2003,

4



but were later asked to return to their original jobs due to the business demands of the company. Plaintiff later resumed cross-training as a Loom Fixer in 2004, but Rogers did not.

Plaintiff completed his training and became qualified for the position of Loom Fixer. Wilson attests that a Loom Fixer position became available and was posted for employees to bid on in February 2005, and that Plaintiff and another employee, Billy Shannon, were the only two bidders for the position. However, Plaintiff subsequently removed his name as a bidder from that job posting, and Wilson attests that even after she advised Plaintiff that he was qualified for the job and that it was being awarded to him, Plaintiff refused the Loom Fixer job and decided to stay in his original position.

Wilson attests that in March 2005, she received a complaint that Plaintiff was harassing and bothering employee Linda Thompson. Wilson attests that she also received a complaint from another female employee, Tammy Dove. Wilson met with the Plaintiff on March 4, 2005. Wilson further attests that, on March 7, 2005, Plaintiff admitted to an EEOC/SCHAC investigator that he had disclosed the Defendant's proprietary and confidential personnel information containing other employees' social security numbers, alien registration numbers, and rates of pay to his friends and relatives. Wilson attests that Plaintiff's disclosure of the Defendant's proprietary and confidential information was a serious violation of the Defendant's rules and regulations and was a terminable offense, and that she along with representatives from the Defendant's legal department advised Plaintiff that he must return all of the Defendant's proprietary and confidential information he had in his possession. See Wilson Affidavit; see also, Exhibit 3 to Wilson Affidavit.

Wilson attests that Plaintiff failed to return the Defendant's proprietary and confidential information, so she hand delivered a letter to him on March 18, 2005 advising that this



material must be returned by no later than 5:00, p.m. that day.  See also Exhibit 5 to Wilson Affidavit.  Wilson attests that Plaintiff was expressly warned that his failure to return the Defendant's confidential and proprietary information by the deadline would result in his termination.  Plaintiff then did return some of the material to Wilson, but Wilson attests that she subsequently learned during Plaintiff's deposition in this case that he did not return all of the material, but had instead retained documents he believed would be helpful to use against the Defendant.

Wilson attests that after Plaintiff returned the confidential material to her on March 18, 2005, she advised Plaintiff that she was going issue him a final written warning for having disclosed this information, and that she thereafter did so on March 22, 2005.  This warning expressly provided that "any future violations will result in immediate termination."  See also Exhibit 6 to Wilson Affidavit.  Wilson attests that when she reviewed this warning with the Plaintiff on March 18 and again on March 22, Plaintiff refused to sign the record of warning.

Wilson attests that on March 16, 2005, the Defendant notified its employees, including the Plaintiff, that it would be closing its Fort Lawn, South Carolina , facilities, and that the employees would therefore be losing their jobs at the plants.  Wilson attests that thereafter, on April 18, 2005, she received a formal complaint from Linda Thompson that Plaintiff had physically assaulted her on company property on Saturday, April 16, 2005.  Wilson attests that she had already learned of this assault from Susan Steele, a shift supervisor, who had called her at home the night of April 16, 2005.  Wilson attests that Plaintiff had not been scheduled to work on April 16, 2005, and was therefore in violation of company policy by being on the Defendant's property.  See also, Exhibit 3 to Wilson Affidavit.   Wilson attests that she interviewed both Thompson and Betty Todd, a witness to the assault, who confirmed that Plaintiff had struck Thompson.  Wilson attests that she then informed



the Plaintiff on April 19, 2005 that he was being suspended effective immediately pending completion of the investigation, and that she requested that Plaintiff leave the Defendant's property. Plaintiff was to return on April 20, 2005 to meet with her as part of the investigation.

Wilson attests that she did meet with the Plaintiff on April 20 together with some other managers and a security guard. Wilson attests that Plaintiff did not deny the allegations made by Thompson, and that she then terminated Plaintiff's employment effective immediately. Wilson attests that, pursuant to the Defendant's termination procedures, the Defendant's Human Resources Director, Gracie Coleman, reviewed and approved her decision. See also, Exhibit 7 to Wilson Affidavit. Wilson attests that her decision to terminate Plaintiff's employment had nothing to do with any prior charge of discrimination filed with SCHAC/EEOC, and that other employees who have committed policy infractions similar to those of the Plaintiff have also been terminated. Wilson gives as an example the termination of employee Denis Hernandez, a Hispanic, in the fall of 2003 after he had physically assaulted a female employee.

Wilson attests that, based on her review of the Defendant's business records, there were no Weaver cross-training positions that were posted at any time from 2002 through the closing of the Defendant's Plant on May 15, 2005, and that the Plaintiff therefore did not bid on any Weaver cross-training positions during that period of time. Wilson further attests that there were no Hispanic employees who were promoted over the Plaintiff for any position Plaintiff bid on at the Plant at any time from 2002 through termination of the Plaintiff's employment on April 20, 2005. Similarly, there were no Hispanic employees at the plant who bid on and were selected for a cross-training opportunity that the Plaintiff also bid on and was denied.

With respect to the issue of overtime, Wilson attests that there was frequently a need



for qualified employees to work overtime at the Plant, with supervisors selecting employees to work overtime based on their availability, qualifications to perform the necessary job, and dependability. Wilson attests that the plant employee with the most amount of overtime work in 2004 was an African American, and that based on her review of the Defendant's personnel records, the Plaintiff worked more overtime than seven Hispanic employees in 2004. <u>See</u> <u>also</u>, <u>Exhibit 8 to Wilson Affidavit</u>. Wilson further attests that there were times during the Plaintiff's employment when he did not have a telephone, which Plaintiff himself admitted, and was therefore unavailable to be contacted for overtime on the short notice that is often required. Wilson attests that because Plaintiff did not have a telephone, supervisors were not able to contact him for overtime on some occasions, but that at no time during his employment was he denied overtime on the basis of his national origin or for any other prohibited reason. Wilson also attests that Plaintiff never made any allegation of purported national origin discrimination or retaliation to her at any time while she was at the Elliott Plant.

Finally, Wilson attests that her review of the Defendant's personnel records reveals that in December 2004 a female employee, Cindy Gandy, filed a complaint against the Plaintiff alleging that he had sexually harassed her at the gas station across the street from the Elliott Plant. Wilson attests that an investigation was conducted, but that it was determined that Plaintiff's conduct did not rise to the level of harassment. However, the Defendant's anti-harassment policy was reviewed with him and Plaintiff was cautioned about inappropriate conduct in the workplace. Plaintiff was not disciplined in connection with that incident. <u>See</u> <u>generally</u>, <u>Wilson Affidavit, with attached Exhibits</u>.

The Defendant has also submitted as Exhibit C to its memorandum copies of selected



pages from the Plaintiff's deposition, as well as deposition exhibits.

In opposition to the Defendant's motion for summary judgment, Plaintiff has submitted numerous exhibits as attachments to his opposition memorandum. These exhibits include shift schedules, investigation reports, submissions from county and city courts, incident reports purportedly for Hispanic workers, and hiring information. Many of these exhibits are also exhibits to Plaintiff's deposition.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

### I.

### (National Origin Discrimination Claim)

a) **Scope of Claim.** In his memorandum opposing summary judgment, Plaintiff alleges that the discrimination claims being asserted in this case include being denied personal leave on April 7, 2005 when Hispanics were not denied leave for similar reasons, that the Defendant allowed Hispanics to run jobs (Weaver) that he wanted to run, that he was placed on layoff in favor of Hispanics in the fall/winter of 2003/2004, that he was denied a leave of absence when his house burned in 2001, that Hispanics were given more overtime than Plaintiff and other "Americans", and



that the Defendant preferred Hispanics in hiring and firing since the year 2000.  See generally, Plaintiff's Brief, pp. 3-7.

However, the Defendant argues that the only claims Plaintiff asserted in his administrative charges with respect to national origin were that he had been denied overtime and leave which was granted to Hispanics, and that he made no national origin discrimination claims relating to training and promotion opportunities.  Rather, Plaintiff's claims relating to training and promotions related only to his race discrimination charge, which is not a part of this lawsuit. Defendant argues, therefore, that since the only claims of discrimination asserted by the Plaintiff in the national origin discrimination cause of action in his Complaint relate to hiring, promotion, and training, these claims are barred from consideration by this Court and should be dismissed.

In order to bring a lawsuit in United States District Court under Title VII, a plaintiff is first required to properly exhaust his or her administrative remedies.  Specifically, Title VII requires that a claimant file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state", within three  hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier.  See 42 U.S.C. § 2000e-5(e).  It is undisputed that South Carolina is a deferral state, and that SCHAC is the appropriate state agency for purposes of initiating state proceedings.  Plaintiff initiated his complaint by filing an administrative charge with SCHAC on October 21, 2004 (amended November 29, 2004), as well as a second administrative charge on May 11, 2005.  Plaintiff's Deposition, Defendant's Exhibits 13, 14 and 17.  Therefore, Plaintiff had three hundred (300) days from the filing of each of these



administrative charges to assert the promotion and training claims set forth in his Complaint, and a failure by him to do so bars him from pursuing a Title VII lawsuit on those claims in this Court. United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); Mickel v. South Carolina State Employment Serv., 377 F.2d 239, 242 (4th Cir. 1967).

The record reflects that Plaintiff's administrative charge of discrimination filed October 21, 2004 alleges that he had been discriminated against on the basis of his race (African American) when less qualified white employees were placed in training for the position of "Loom Fixer", when he was not. Plaintiff's Deposition, Defendant's Exhibit 13. Plaintiff later amended this charge on November 29, 2004 to add a claim that he was being retaliated against on the basis of his national origin (American citizen) when he was not placed in training for the position of "Loom Fixer" and for the position of "Overhauler" in May and September 2004, and that Hispanic employees were given overtime and time off when he was not. Plaintiff's Deposition, Defendant's Exhibit 14. In his filing of May 11, 2005 (following his termination), Plaintiff alleged race discrimination, national origin discrimination, and retaliation. With respect to his national origin, Plaintiff alleged that he had been denied a leave of absence while a Hispanic employee was allowed a leave of absence. Plaintiff's Deposition, Defendant's Exhibit 17.

A plain reading of these administrative charges shows that, with respect to his first charge (as amended), Plaintiff charged that Hispanics were "given all the overtime they want to work, while other employees ask for it and are denied", and that Hispanics were also afforded "personal leave" under terms and conditions that were denied to the Plaintiff. Plaintiff's Deposition, Defendant's Exhibit 14. In his second administrative filing, Plaintiff alleged that when he was denied a leave of absence due to his health, a Hispanic employee told him that "he did not have to get a



doctor's excuse to get a leave of absence." While Plaintiff's first administrative charge (as amended) does also make claims relating to training and promotions, those claims (denoted as claims (a) through (c)) all relate to Plaintiff's race discrimination charge.  Therefore, the Defendant is correct in arguing that Plaintiff never made a claim in his administrative filings that he was being discriminated against on the basis of his national origin in hiring and promotion decisions, the claims which Plaintiff now asserts in his Complaint.

Plaintiff nevertheless asserts in his brief that "[e]ach and every claim [argued in his brief] was investigated by SCHAC/EEOC....".  Plaintiff's Brief, at p. 3. If SCHAC did investigate these other claims during the course of its investigation, then they would be exhausted for purposes of this lawsuit.  See Smith v. First Union Nat'l Bank, 202 F.3d 234, 248 (4th Cir. 2000); Tran v. Standard Motor Products, Inc., 10 F.Supp.2d 1199, 1208 (D.Kan. 1998) [even where claimant fails to assert a claim in their administrative charge, if that claim was nevertheless considered by the administrative agency as part of the administrative investigation of the claimant's administrative filing, then the claim is properly exhausted]; Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) ["only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit"]; but see LaPorta v. City of Chicago, No. 95-2899, 1999 WL 965970 at * 3 (N.D.Ill. 1999).  However, in this case, a copy of SCHAC's administrative findings with respect to Plaintiff's first charge[4] has been submitted to the Court as an exhibit, and these administrative findings reflect that the only claims relating to national origin

---

[4]Plaintiff apparently filed this Complaint while his second administrative charge was still pending before SCHAC, and therefore no administrative findings were ever issued with respect to that second charge.

12



discrimination investigated by the administrative agency were Plaintiff's claims that he was denied

overtime because of his national origin, and that he was denied leave because of his national origin.

See Plaintiff's Deposition, Defendant's Exhibit 16. Therefore, Plaintiff's claims with respect to the

denial of overtime and leave are the only national origin discrimination claims that would properly

be before this Court for consideration. Marshall v. Federal Exp. Corp., 130 F.3d 1095, 1098

(D.C.Cir. 1997) ["[A]llowing a complaint to encompass allegations outside the ambit of the predicate

EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive

the charged party of notice of the charge, as surely as would an initial failure to timely file the EEOC

charge."] (quoting Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989)); Smith

v. First Union National Bank, 202 F.3d at 247 [EEOC charge "defines the scope of [a plaintiff's]

subsequent right to institute a civil suit"]; Sloop v. Memorial Mission Hosp., Inc., 198 F.3d 147, 148

(4th Cir. 1999) [a Title VII claimant must first exhaust administrative remedies with regard to their

claim before filing the claim in federal court]; Chacko v. Patuxent Institution, 429 F.3d 505, 509 (4th

Cir. 2005); cf. Evans, 80 F.3d at 963 [ "permitting a late amendment to an original discrimination

charge adding an entirely new theory of recovery 'would eviscerate the administrative charge filing

requirement altogether' by depriving the employer of adequate notice and resulting in a failure to

investigate by the responsible agency."] (quoting Conroy v. Boston Edison Co., 758 F.Supp. 54, 59-

60 (D.Mass. 1991); Lattimore v. Polaroid Corp., 99 F.3d 456, 464-465 (1st Cir. 1996); Lesch v.

Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002) [when plaintiff changed theory of his case

at summary judgment from a termination claim to a failure to transfer claim, court found that plaintiff

was bound by the charges he filed with the EEOC, which only mentioned his discriminatory

termination claim, and that plaintiff's failure to transfer claim was therefore not properly before the



court].

      **b) <u>Claims relating to overtime and leave</u>.** As noted, Defendant argues that Plaintiff

has only asserted claims for hiring, promotion and training in his Complaint, and that since these

claims are barred from consideration by this Court, Plaintiff's national origin discrimination claim

should be dismissed <u>in</u> <u>toto</u>.  Defendant's argument is well taken, since no specific allegations

relating to overtime or leave are set forth in Plaintiff's discrimination cause of action.  However, even

assuming for purposes of summary judgment that Plaintiff's national origin discrimination disparate

treatment claim could be read broadly enough to include Plaintiff's claims relating to overtime and/or

leave, the undersigned does not find that sufficient evidence has been presented for these claims to

survive summary judgment.

      First, only claims occurring after December 26, 2003 (300 days before he filed his first

administrative charge of discrimination) would properly be before this Court.  <u>Hirst</u>, 604 F.2d at 847;

<u>Mickel</u>, 377 F.2d at 242;  <u>See</u> <u>Amtrak v. Abner Morgan, Jr.</u>, 536 U.S. 101, 114 (2002) ["Each

incident of discrimination...constitutes a separate actionable 'unlawful employment practice'," and

prior discrete discriminatory acts which are not filed within the 300 day time limit "are untimely filed

and no longer actionable."].  With respect to claims occurring within this time period, Plaintiff

references in his brief that he was improperly denied personal leave by Harold Andrews on April 7,

2005, and that Hispanics were given more overtime in 2004.[5]  However, Plaintiff has offered no

evidence of a discriminatory animus relating to these claims.

      Title VII protects individuals from discrimination based on their "national origin",

---

     [5]Plaintiff's claim that he was improperly denied a leave of absence when his house burned
down refers to an incident that occurred in 2001.  Therefore, that incident is time barred from
consideration by this Court.  <u>Amtrak</u>, 536 U.S. at 114.



including citizens of the United States. See Espinoza v. Farah Manufacturing Co., 414 U.S. 86, 88 (1973)[defining national origin as "the country where a person was born, or, more broadly, the country from which his or her ancestors came."]. Plaintiff's claim is that the Defendant discriminated against him as an American, in favor of non-native Hispanics, although he seems to lump all Hispanics into this category.[6] This claim requires proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). Since Plaintiff has not offered any direct evidence of national origin discrimination as part of either his overtime claim or his leave of absence claim[7], Plaintiff must proceed through the indirect evidence of the McDonnell Douglas framework.[8]

      Under this analytical framework, Plaintiff would first have to establish a prima facie

---

[6]Hispanics obviously can also be Americans. Plaintiff argues that he was being discriminated against in favor of Hispanics from Mexico, who were not American citizens. Plaintiff also asserts that the Defendant was employing Hispanics at its Plant who were in the country illegally. See generally, Plaintiff's Deposition, pp. 183-186, 225-226, 237-239.

[7]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); see Williams v. General Motors Corp., 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).

[8]In addition to a McDonnell Douglas analysis, consideration of Plaintiff's claim under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or indirect, evidence of discrimination. Hill v. Lockheed Martin Logistics Mgt., Inc., 354 F.3d 277, 284-285 (4th Cir. 2004); see also Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir. 2005) [ADEA]. Previously, consideration of a claim under the mixed motive analysis was only proper in direct evidence cases. However, neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis. See Hopes v. Roche, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005) (citing Nagy v. Baltimore Life Ins. Co., 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]).



case of discrimination.  Once a prima facie case has been established, a rebuttable presumption is created that the employer unlawfully discriminated against the Plaintiff.  Second, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions. Third, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on Plaintiff's national origin.  McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs, 450 U.S. at 252-256; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout.  Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

To establish his prima facie case of discrimination, Plaintiff must show 1) that he is a member of a protected class; 2) that he suffered an adverse employment action; and 3) that similarly situated employees who were not members of his protected class were not subjected to similar adverse employment actions. Moore v. City of Charlotte, N.C., 754 F.2d 1100, 1106 (4th Cir. 1985); Burdette v. FMC Corp., 566 F.Supp. 808, 814 (D.C.Cir. 1983); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994).[9]  It is uncontested that Plaintiff is a member of a protected class; however, Defendants argue that Plaintiff has presented no evidence to show that he suffered any adverse employment action, or that Hispanics who were not members of his protected class received more favorable

---

[9]The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged.  Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58(4th Cir. 1995).

16



treatment.  The undersigned agrees.

First, with respect to Plaintiff's claim that he was denied personal leave by Harold Andrews on April 7, 2005, Plaintiff has provided no evidence whatsoever concerning the specifics of this incident.  He does not discuss this incident further in his brief other than to say that he "asked for leave and was denied", nor does either party make reference to anywhere in Plaintiff's deposition where he talked about this incident.[10]  In his "affidavit" filed with the Court on October 6, 2006 (Court Document No. 21), Plaintiff actually describes this incident as having occurred on April 7, 2004, not 2005.  Plaintiff states that he requested leave during an awards meeting, and was denied by Harold Andrews (the Weave Room Department Manager) and told to "go to the doctor if [he] wanted to be out."  Defendant correctly notes in its pending motion to strike, however, that this "affidavit" is unsworn.  Nevertheless, even if this document were in proper affidavit form for consideration by this Court, the statement contained in the affidavit relating to this incident is not in and of itself evidence of national origin discrimination, or indeed of any type of discrimination.

Plaintiff also refers the Court to Exhibit 17 to his brief as being evidence to support this claim. This exhibit is a request for leave of absence by employee Rodrigo Campus, and reflects that Campus was granted leave on June 3, 2002 (either two or three years before Plaintiff's request for leave in April of 2004 or 2005) for a "personal emergency" by Preston Cooper, who is listed as either being Campus' supervisor or as an official in the medical office. See Plaintiff's Exhibit 17. However the undersigned can discern no evidence of national origin discrimination in this document.

---

[10]Rule 56 does not impose upon the District Court a duty to sift through the record in search of evidence to support a litigant's arguments on summary judgment. Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 115 S.Ct. 195 (1994); Malina v. Baltimore Gas & Elec., 18 F.Supp.2d 596, 604 (D.Md. 1998); Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 215 (4th Cir. 1993), cert. denied sub nom, Price v. City of Charlotte, 420 U.S. 1116 (1997).



Even assuming Plaintiff was denied leave on April 7, 2004 (or 2005),  and that this denial could constitute an adverse employment action for purposes of a Title VII claim, the mere fact that he has submitted a document showing where a Hispanic employee was granted leave by a different supervisor several years earlier does not constitute evidence that employees outside of his protected class were not subjected to similar adverse employment actions.  Indeed, there is no evidence that the two incidents at issue were similar at all.  *Cf.* Ruth v. Children's Medical Center, No. 90-4069, 1991 WL 151158 (6th Cir. August 8, 1991) ["In order for two or more employees to be considered similarly-situated for the purpose of creating an inference of different treatment in a Title VII case, the Plaintiff must prove that all of the relevant aspects of his employment situation were 'nearly identical' to those of the...employees who he alleges were treated more favorably.  This similarity between the compared employees must exist in all relevant [emphasis added] aspects of their respective employment circumstances."]; Hollins v. Atlantic Co., 188 F.3d 652, 659 (6th Cir. 1994); Mitchell v. Toledo Hospital, 964 F.2d 577, 583 (6th Cir. 1992) ["[T]o be deemed 'similarly-situated', the individuals with whom the Plaintiff seeks to compare his [ ] treatment must have...been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."]; Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-618 (7th Cir. 2000) [holding that Plaintiff must demonstrate that the same supervisor was involved in comparable situations to demonstrate disparate treatment of similarly situated employees]; Heyward v. Monroe, No. 97-2430, 1998 WL 841494, **2 (4th Cir. Dec. 7, 1998) [employees similarly situated only if they "dealt with the same supervisor...."].

        Plaintiff has not even provided the reason he was denied leave on April 7 of 2004 or



2005, nor has any evidence been submitted to show why Campus needed leave in 2002 or the circumstances surrounding it having been granted.    Plaintiff's evidence does not even indicate whether Campus is a non-native Mexican national, or is an American.[11]  Mere evidence that Plaintiff was denied a leave request in 2004 or 2005 while a Hispanic employee was granted a leave request in 2002 by a different supervisor does not constitute evidence that Plaintiff was discriminated against on the basis of his national origin.  Ulloa v. American Express Travel Related Servs. Co., 822 F.Supp. 1566, 1571 (S.D.Fla. 1993)[Employer entitled to summary judgment where employee "has failed to show by a preponderance of the evidence that [he] received disparate treatment when compared to [non-protected] employees."].  James v. St. Anthony Hosp., No. 93-6255, 1994 WL 75874 at *2 (10th Cir. 1994) ["Merely finding that people have been treated differently stops short of the crucial question: *why* people have been treated differently."].

  With respect to Plaintiff's overtime claim, the Defendant has submitted evidence to show that the Plant employee with the most amount of overtime work in all of 2004 was an African-American, not a Hispanic, and that Plaintiff himself worked more overtime than seven Hispanic employees in 2004.    See Wilson Affidavit, and Attached Exhibit 8 [Overtime Records]. Additionally, of the sixteen Plant employees who had more overtime hours than the Plaintiff in 2004, only six were Hispanics.  Of the remaining ten employees,  seven were, like the Plaintiff, African-Americans, while three were Caucasian.  Id.  Even considered in the light most favorable to the

---

[11]While "Hispanics" in general could probably constitute a separate class for purposes of a national origin discrimination claim; see 29 C.F.R. § 1606.1 (1986) [national origin discrimination "includ[es], but [is] not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's place of origin; or because an individual has the physical cultural, or linguistic characteristics of a national origin group."]; Plaintiff appears to limit his claim of discrimination to non-native Hispanics.  See n. 6, supra.



Plaintiff, the undersigned can discern no inference that Plaintiff was discriminated against on the basis of his national origin in this evidence.

Plaintiff also failed to offer any specifics during his deposition testimony with respect to this claim, and conceded that he did not have any documentation to support his allegations. Rather, he just reiterated his general and conclusory charge that numerous Hispanics were allowed to work overtime while he was being denied overtime. <u>Plaintiff's Deposition</u>, pp. 202, 225-226. The undersigned has also independently reviewed the exhibits Plaintiff has attached to his memorandum in opposition, and can find no support for Plaintiff's overtime claim in those documents. In sum, other than Plaintiff's own general and conclusory statements that he was discriminated against in favor of Hispanics for overtime work, there is simply no evidence before the Court to support Plaintiff's overtime claim. Such general and conclusory allegations, without any evidentiary support, are insufficient to survive summary judgment. <u>See</u> <u>Causey v. Balog</u>, 162 F.3d 795, 802 (4th Cir. 1998)[conclusory statements, without specific evidentiary support, do not support a claim for discrimination]; <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 960 (4th Cir. 1996) ["unsubstantiated allegations" are insufficient to defeat summary judgment]; <u>cf.</u> <u>Cook v. CSK Transp. Corp.</u>, 988 F.2d 507, 513 (4th Cir. 1993) ["[U]nsupported allegations do not establish a prima facie case of race discrimination under Title VII."].

Therefore, Plaintiff having failed to present sufficient evidence to give rise to a genuine issue of fact as to whether he was discriminated against on the basis of his national origin, his national origin discrimination claim should be dismissed. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) ["Rule 56(c) mandates the entry of summary judgment... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on



which that party will bear the burden of proof at trial."]; <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985) [A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."]; *cf.* <u>Hawkins v. Pepsico, Inc.</u>, 203 F.3d 274,281 (4th Cir. 2000) [affirming the grant of summary judgment to the employer on Title VII claim where the employee could not "show that... [the] problems were racial in nature"].

## II.

### (Retaliation Claim)

Plaintiff alleges in his second cause of action that he was fired by the Defendant for having filed his original SCHAC complaint, and that his termination was therefore unlawful retaliation for having engaged in protected conduct in violation of Title VII.

Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases are subject to the same requirements of proof as are applicable to disparate treatment claims. <u>Ross v. Communications Satellite Corp.</u>, 759 F.2d 355, 365 (4th Cir. 1985) <u>overruled on other grounds</u>, <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989); <u>see also</u> <u>Williams v. Cerberonics, Inc.</u>, 871 F.2d 452, 457 (4th Cir. 1989). "The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie

21



case consists of three elements:  (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997).  Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions.  If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must demonstrate that the Defendant's proffered reason is pretextural. Id.

It is undisputed that Plaintiff engaged in protected activity when he filed his administrative charge with SCHAC on October 21, 2004, and that the Defendant took an adverse employment action against him when it terminated his employment on April 20, 2005.  Defendant argues, however, that Plaintiff has failed to present any evidence to show a causal connection between these two events.  See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) [Plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action(s)"].  As support for this argument, Defendant points to Plaintiff's own deposition testimony wherein he conceded that Wilson, the Human Resources Manager who terminated him, had not acted out of a retaliatory animus.  Plaintiff's Deposition, pp. 7-8.

In making his arguments for retaliatory conduct in his memorandum opposing summary judgment, Plaintiff argues that the incident with Cindy Gandy in December 2004 was never determined to be sexual harassment, and that he was fired only after "Linda Thompson gave false statements to assist Springs Industries in firing me."  Plaintiff's Brief, at p. 10.  However, Plaintiff does not dispute that Linda Thompson filed a charge of harassment against him with the Defendant,



and pursued that charge. Hence, even if the Court were to find that the relatively short time span between Plaintiff's October 2004 SCHAC filing and his April 2005 termination was sufficient to establish a causal connection for purposes of establishing a prima facie case,[12] the evidence before the Court certainly sets forth a legitimate, non-discriminatory reason for Plaintiff's termination, and Plaintiff has failed to establish pretext.

In order to show pretext, Plaintiff must show that "but for" his employer's intent to discriminate against him, he would not have suffered the adverse employment action. EEOC, 955 F.2d at 941; Conkwright v. Westinghouse Electric Corp., 933 F.2d 231, 234 (4th Cir. 1991). "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole . . . must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus].'" LeBlanc, 6 F.3d at 843 (citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2105-2109 (2000). Plaintiff has failed to present any such evidence. To the contrary, the evidence provided to the Court by *both* the Defendant and the Plaintiff reflects that the decision to terminate Plaintiff was made because of the incident involving Linda Thompson. Wilson Affidavit, and

---

[12]*Cf.* Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago, 104 F.3d 1004, 1013 (7th Cir. 1997)[noting that "suspicious timing does constitute circumstantial . . . evidence to support a claim of discrimination"]; Gordon v. Southern Bells, Inc., 67 F.Supp.2d 966, 988 (S.D.Ind. 1999)["A short time span between protected activity and an adverse employment action may be sufficient to prove a causal connection between the two events. . . . A close temporal connection between the two events is generally enough to satisfy the third element of the prima facie case."]; Jones v. City of Elizabeth City, North Carolina, 840 F.Supp. 398, 403 (E.D.N.C. 1996), aff'd., 2 F.3d 1149 (4th Cir. 1993); Williams v. Cerberonics, 871 F.2d at 457; Texas Dep't of Community Affairs, 450 U.S. at 253 [the burden of establishing a prima facie case is not onerous]; Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991).

23



Exhibit 7; Thompson Affidavit; see also, Plaintiff's Deposition, pp. 133-137, 150-155. *cf.* Ford v. General Electric Lighting, LLC, 121 Fed.Appx. 1, 7 (4th Cir. 2005) [employee failed to establish pretext for termination where employer fired him for fighting in the workplace]; McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1129 (10th Cir. 1998) [Plaintiff failed to establish pretext where he was terminated after employer conducted an investigation into allegations of misconduct and believed the allegations to be true]. Further, Plaintiff has failed to present any evidence to show a retaliatory animus on the part of Wilson or any other decisionmaker. Indeed, Plaintiff testified that he is not even alleging that Wilson (the person who made the decision to fire him) had any retaliatory animus. Plaintiff's Deposition, pp. 7-8.

         In order to survive summary judgment, Plaintiff must proffer evidence sufficient to create a genuine issue of fact that his employer "[took] the adverse employment action[s] because [he] engaged in protected activity," not because of other reasons. Dowe, 145 F.3d at 657. *Cf.* Rudolph v. Hechinger, 884 F.Supp. 184, 188 (D.Md. 1995) ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1257 (5th Cir. 1977). As Plaintiff has failed to do so, Defendant's motion for summary judgment with regard to his retaliation claim should be granted.

## Conclusion

         Based on the foregoing, it is recommended that the Defendant's motion for summary



judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

January 5, 2007



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

